IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD M. YONEMOTO, | ) | CIV. NO. 06-00378 BMK |
| | ) | |
| Plaintiff, | ) | AMENDED ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| v. | ) | PARTIAL SUMMARY |
| | ) | JUDGMENT |
| DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

AMENDED ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald M. Yonemoto ("Yonemoto") requested certain information from Defendant Department of Veterans Affairs ("the VA") under the Freedom of Information Act ("FOIA"), 5 U.S.C.A. § 552 (2006) and the Privacy Act, 5 U.S.C.A. § 552a (2006).  Many of these requests concern emails sent or received by Yonemoto's colleagues that directly or indirectly refer to Yonemoto. The VA provided Yonemoto with much of the information he has requested, but has redacted some parts of some of the documents.  Yonemoto appealed these redactions, but they were upheld by the General Counsel of the VA.  Yonemoto filed the present action to obtain review of the VA's decisions denying his appeals.

The VA has now moved for partial summary judgment with respect to one of these decisions denying Yonemoto's appeal; namely, the VA's April 6, 2006 decision affirming the redaction of portions of five different emails on four of the twenty-one pages provided to Yonemoto pursuant to a request he made on November 22, 2005. The substance of these redactions is not in dispute. The VA states, and Yonemoto does not dispute, that these redactions involve the email authors' personal feelings about Yonemoto. After careful consideration of the motion, supporting and opposing memoranda, and arguments of counsel, the motion is hereby GRANTED.

## STANDARD OF REVIEW

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried.

Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

## DISCUSSION

### I. FREEDOM OF INFORMATION ACT

The Freedom of Information Act requires in part that "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). Where an agency refuses to disclose certain information, district courts have jurisdiction to review the request and "to order the production of any agency records improperly withheld." 5 U.S.C. § 552(4)(B). Records are not improperly withheld, however, if they fall into one of FOIA's nine exemptions.

Exemption 6 is one of these nine exemptions. It exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). For Exemption 6 to apply, the requested record must first be deemed either a

"personnel" file, a "medical" file, or a "similar" file.  If the record fits one of these three categories, the court must then "balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect" to determine whether there is a clearly unwarranted invasion of privacy.  United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 495 (1994) (quoting Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 776 (1989)).  When balancing the public interest in disclosure against the interest Congress intended the exemption to protect, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'"  United States Dep't of Defense, 510 U.S. at 495 (quoting Reporters Comm. for Freedom of Press, 489 U.S. at 775 (emphasis omitted)).

        The Court finds as a matter of law that Exemption 6 was properly applied.  The emails at issue are "similar files" in which their authors have personal privacy interests.  Because there is no public interest in the redacted information, a reasonable finder of fact could only find that the disclosure of the information would have been a clearly unwarranted invasion of privacy.  Yonemoto cannot prevail under FOIA.

    A.    <u>"Similar Files"</u>

Under Exemption 6, a file is "similar" to a personnel or medical file where it applies to a particular individual. <u>United States Dep't of State v. Washington Post Co.</u>, 456 U.S. 595, 602 (1982); <u>see also</u> H.R. Rep. No. 89-1497, at 4 (1966), <u>as reprinted in</u> 1966 U.S.C.C.A.N., 2418, 2428 (stating that "[t]he exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual"). Even records comprising "[p]urely personal details of government employees, such as personal addresses" are considered "similar files" for the purposes of Exemption 6. <u>Lurie v. Dep't of Army</u>, 970 F.Supp. 19, 35 (D.D.C. 1997). Intra-agency emails often qualify as "similar files" under Exemption 6. <u>See, e.g.</u>, <u>Lahr v. Nat'l Transp. Safety Bd.</u>, 453 F.Supp.2d 1153, 1183 (C.D. Cal. 2006) (finding that "both records are emails that qualify as 'similar files' under Exemption 6); <u>Kidd v. Dep't of Justice</u>, 362 F.Supp.2d 291, 296 (D.D.C. 2005) (assuming that an electronic mail message was a "similar file" under Exemption 6).

A record is not a "similar file," however, where the records "have an essentially business nature," or where they are "concerned with professional relationships." <u>Sims v. Central Intelligence Agency</u>, 642 F.2d 562, 574 (D.C. Cir.

1980) (construing Board of Trade of City of Chicago v. Commodity Futures Trading Comm'n, 627 F.2d 392 (D.C. Cir. 1980)).

   Here, the email redactions may not appear "similar" to personnel or medical files at first glance.  Indeed, the type of information contained in the email redactions is undoubtedly different than the type of information contained in personnel and medical records.  But the individual email authors' subjective interests in the non-disclosure of information contained in the email redactions is very similar to individuals' subjective interest in the non-disclosure of their medical and personnel records.  It is this similarity of subjective individual interest–not any similarity in type of information–that the Supreme Court focused on in broadly defining "similar files" as those which contain information that applies to a "particular individual," Washington Post Co., 456 U.S. at 602.  The email redactions here certainly apply to their particular authors, who have an interest in not having that information disclosed.

   Yonemoto argues that the redacted portions of the emails "are related to business or profession matters which are not subject to FOIA Exemption 6." (Mem. Opp. Mot. 13).  The Court disagrees.  Just because the communications are between co-workers does not mean that the subject of the emails is of an "essentially business nature," Sims, 642 F.2d at 574.  To the contrary, the Vaughn

index demonstrates that the redacted material is of a personal, not business, nature.[1]

The redacted portions of the emails at issue here fall within the scope of FOIA Exemption 6, and the Court must now determine whether disclosure of the records would have been a "clearly unwarranted" invasion of privacy.

### B. "Clearly Unwarranted Invasion of Privacy"

To determine whether disclosure of records would be a "clearly unwarranted" invasion of privacy, the court must weigh the personal interest in privacy against the public interest in disclosure. United States Dep't of Defense, 510 U.S. at 495.[2] Government employees have a privacy interest "in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment

---

[1] The email of June 5, 2003 regards Dr. MacBride's "*personal* attitude towards the plaintiff"; the email of January 12, 2004, similarly regards Dr. MacBride's "*personal* attitude towards the work skills of the plaintiff and another"; the emails of January 28, 2004 and January 30, 2004 regard Mary Cronin's "*personal* reaction to a preceding e-mail from David Burge," to which Dr. MacBride responds "with his *personal* take"; the second January 30, 2004 email similarly reflects Dr. MacBride's "*personal* attitude towards the plaintiff." (Def.'s Concise Statement of Facts, Ex. 1, ¶ 4 (emphases added).

[2] Yonemoto urges the Court to apply a four-factor balancing test created by the Ninth Circuit in Church of Scientology of California v. United States Dep't of the Army, 611 F.2d 738, 746 (9th Cir. 1979) (stating that courts must weigh "(1) the plaintiff's interest in disclosure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternative means of obtaining the requested information"). This four-factor balancing has not been followed in more recent decisions of the Ninth Circuit Court of Appeals, howver. See Painting Indus. of Hawaii Market Recovery Fund v. United States Dep't of Air Force, 26 F.3d 1479 (9th Cir. 1994); Hunt v. Fed. Bureau of Investigation, 972 F.2d 86 (9th Cir. 1992). The Court will thus follow more recent Ninth Circuit case law, and determine the personal privacy interests involved, determine the public interest in disclosure, and then weigh the two interests, keeping in mind that the invasion of privacy must be "clearly unwarranted" under the statute.

in either their official or private lives." Lesar v. United States Dep't of Justice, 636 F.2d 472, 488 (D.C. Cir. 1980); see also, e.g. Painting Indus. of Hawaii Market Recovery Fund, 26 F.3d at 1484 (holding that government employees have a "substantial privacy interest" in "information tying their names and addresses to precise payroll figures"); Am. Federation of Gov't Employees v. United States Dep't of Health and Human Servs., 712 F.2d 931, 932 (4th Cir. 1983) (holding that government employees "have a strong privacy interest in their home addresses").

The public interest in disclosure, on the other hand, is limited to "the extent to which disclosure would serve the 'core purpose of FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" United States Dep't of Defense, 510 U.S. at 495 (quoting Reporters Comm. for Freedom of Press, 489 U.S. at 775) (emphasis omitted). Moreover, "whether an invasion of privacy is warranted cannot turn on the purposes for which the request was made." Reporters Comm. for Freedom of Press, 489 U.S. at 771.

Here, the authors of the redacted emails do have a cognizable privacy interest in their personal thoughts and feelings about Yonemoto. The release of the redacted portions of these emails could "conceivably . . . subject them to annoyance . . . in either their official or private lives," Lesar, 636 F.2d at 488. Just as

government employees have privacy interests in their names, addresses, and financial information, so too do they have a privacy interest in their personal thoughts about a co-worker.

Yonemoto argues that the email authors have no privacy interest in their communications because certain VA documents inform employees that they ought not have any expectation of privacy with respect to the use of government computers or the VA's electronic mail system. The VA disagrees, arguing that an expectation of privacy exists because "VA policy permits employees to occasionally use office equipment for personal purposes." (Mem. Supp. Mot. 8.) Ultimately, this dispute is not relevant to the question at hand. Even if VA employees have no expectation of privacy for Fourth Amendment purposes, they might still have an interest in keeping their personal communications private. Just because the VA would have the legal right to search their emails does not mean that the authors have no interest in preventing the VA from making that information public. The authors of the redacted emails do have a personal privacy interest in the thoughts and beliefs contained in their communications.

The public, on the other hand, has no legitimate interest in the redacted portions of the emails. The only inquiry in determining the public interest is whether disclosure will "contribut[e] significantly to public understanding of the

9

operations or activities of the government." Reporters Comm. for Freedom of Press, 489 U.S. at 775. Yonemoto argues that "VA Senior Management use of government property to disparage employees . . . hinders his effectiveness to serve the veterans which is the VA's mission and operation" and that disclosure of the redacted information will bring this to light. (Mem. Opp. Mot. 24.) While the disclosure of the redacted portions of the emails may contribute minimally to public understanding of the operations and activities of the VA, it will not contribute significantly to this understanding. For the purposes of the Exemption 6 balancing test, there is no legitimate public interest in disclosure of the redacted portions of the emails.

When a personal privacy interest is weighed against the absence of any public interest in disclosure, the requested record may be properly witheld. Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) (stating that "something, even a modest privacy interest, outweighs nothing every time"). Here, the Court finds that disclosure of the redacted information would constitute a clearly unwarranted invasion of privacy under 5 U.S.C. § 552(b)(6). As a matter of law, Yonemoto will not be able to obtain the redacted information under FOIA.

II. PRIVACY ACT

In addition to seeking access to the redacted portions of the disputed email exchanges under the Freedom of Information Act, Yonemoto also seeks the information under the Privacy Act. The Privacy Act requires agencies that maintain a "system of records" to permit individuals to "gain access to his record or to any information pertaining to him which is contained in the system." 5 U.S.C. § 552a(d)-(d)(1). Disclosure, however, is not the primary goal of the Privacy Act. Henke v. United States Dep't of Commerce, 83 F.3d 1453, 1456 (D.C. Cir. 1996). Rather, its principal purpose is to "safeguard[] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." Bartel v. F.A.A., 725 F.2d 1403, 1407 (D.C. Cir. 1984). To that end, the Privacy Act forbids agencies from disclosing information about an individual where (1) that information is a "record" maintained in a "system of records," and (2) the individual to whom the record pertains has not requested the record or consented to its disclosure in writing. 5 U.S.C. § 552a(b).

Unlike under FOIA, where "record" is not defined, The Privacy Act defines a "record" as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying

> number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(4).  A "system of records" is defined as

> a group of any records under the control of the agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(5).  In addition, each agency that establishes a new "system of records" must publish notice of such establishment in the Federal Register.  5 U.S.C. § 552a(e)(4).

The VA argues that Yonemoto cannot, as a matter of law, prevail under the Privacy Act because the email exchanges he seeks are not contained in a "system of records" as required by 5 U.S.C. § 552a(d).  Yonemoto disagrees, and contends that a system of records exists because "the VA is required to maintain its email records and is able to search and retrieve e-mails based upon a person's name as it was able to produce e-mails responsive to Plaintiff's request."  (Mem. Opp. Mot. 26.)

The VA is correct: there is no evidence before the Court that the email information at issue here "is retrieved" by the agency in practice.  Yonemoto argues that the information "is retrieved" because the agency's actual production of these emails shows that it is capable of retrieving them.  Retrieval capability alone,

however, "is not sufficient to create a system of records." <u>Henke</u>, 83 F.3d at 1459; <u>see also</u> <u>Baker v. Dep't of Navy</u>, 814 F.2d 1381, 1383 (9th Cir 1987) (deferring to a Navy regulation stating that "the capability to retrieve information by personal identifiers alone does not subject a system of records to 5 U.S.C. 552a"); <u>McCready v. Nicholson</u>, 465 F.3d 1, 13 (D.C. Cir. 2006) (finding that no system of records existed even though the *public* was able to retrieve information by searching a website).

Here, it was not the agency, but the public who caused this information to be retrieved. Just because an agency is capable of retrieving the information, and just because it does so to comply with a FOIA request, does not mean that the information is maintained in a Privacy Act "system of records." Yonemoto has presented no evidence upon which a finder of fact could infer that it is the actual practice of the VA to retrieve emails such as these as part of the VA's business or personnel operations. Yonemoto has provided evidence of capability, but practice cannot be inferred from capability, <u>Henke</u>, 83 F.3d at 1459.

The conclusion that the VA's email archives do not constitute a "system of records" is supported by the absence of any such notice of a system from the Federal Register. As required by 5 U.S.C. § 552(a)(4), the VA has provided notice of systems of records in the past. See <u>New System of Records - Automated</u>

13

Electronic Data Management System (EDMS) - VA, 65 Fed. Reg. 25534, 25535 (May 2, 2000) (giving notice of the creation of a new Privacy Act "system of records"). No such notice has been given for any email records system.

Moreover, to find that the VA's email archives constituted a Privacy Act "system of records" would eviscerate the Privacy Act itself. If a "system of records" exists for the purposes of 5 U.S.C. §552a(d), then it also must exist for the purposes of 5 U.S.C. § 552a(b). As is the case here, many emails will be "about" more than one individual.[3] The statute would thus both require the disclosure of such emails under 5 U.S.C. § 552a(d) at the same time that it prohibited their disclosure under § 552a(b).

The Court finds as a matter of law that the emails at issue here are not maintained in a Privacy Act "system of records." Yonemoto has no right to obtain them or inspect them under the Privacy Act.

---

[3]The redacted email of June 5, 2003 (MacBride to Cronin) contains, in the message history, information "about" Mary Cronin: "I gather that Mary Cronin is an Administrative Support Manager, and not Acting Associate Director." The redacted email of January 30, 2004 (11:48 a.m.) (MacBride to Cronin and Van Brocklyn) contains information about Jo Ann Connolly: "She sacrificed her evenings, weekends, and even Holiday Season to create the workflow chart and to complete the myriad other mission-critical tasks that I had assigned." The redacted email of January 30, 2004 (11:10 a.m.) (MacBride to Cronin) contains information about Brandon Yamamoto: "Brandon will work full-time for John Mitson in continuing work on encounter form monitoring and dashboard development." The redacted email of January 12, 2004 (MacBride to Cronin) contains information about JoAnn Connolly: "JoAnn has made a brilliant suggestions which allows us to pay invoices with the current staffing and one additional Fee Payment Cerk [sic]." (Def.'s Concise Statement of Facts, Ex. 3.)

## CONCLUSION

For the foregoing reasons, the VA's motion for partial summary judgment is hereby GRANTED.

The Court is of the opinion that this Order involves a controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order may materially advance the ultimate termination of the litigation. The legal issues disputed in this motion affect far more than the four pages of email records that were selected for partial summary judgment. Yonemoto has made many FOIA requests to the VA, and the VA has denied or redacted a number of these requests based on Exemption 6. Many of these other FOIA requests and the resulting redactions that are at issue in the case will be affected by the legal determination on the applicability of FOIA Exemption 6 and the Privacy Act in this particular context. Therefore, the Court believes that immediate review of the Court's Order Granting Partial Summary Judgment would be the most efficient and expeditious way to advance the ultimate termination of this litigation.

The Court shall stay the proceedings in this matter pending the outcome of the interlocutory appeal of this Order.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: May 2, 2007

Yonemoto v. Dep't of Veterans Affairs; AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; Civ. No. 06-00378 BMK.