IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD M. YONEMOTO, | ) | Civ. No. 06-00378 BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT; ORDER GRANTING |
| | ) | DEFENDANT'S COUNTER- |
| DEPARTMENT OF VETERANS | ) | MOTION FOR SUMMARY |
| AFFAIRS, | ) | JUDGMENT |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
ORDER GRANTING DEFENDANT'S COUNTER-MOTION
FOR SUMMARY JUDGMENT

Plaintiff Ronald M. Yonemoto brought this action against Defendant

Department of Veterans Affairs ("the VA"), claiming it violated the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, et seq., and the Privacy Act, 5 U.S.C.

§ 552a, et seq., by withholding portions of documents he had requested from the

VA.  Although the VA provided Yonemoto with much of the information he

requested, it redacted some parts of some of the documents.  Yonemoto appealed

the redactions, which were upheld by the General Counsel of the VA.  He brought

this lawsuit to seek review of the VA's denial of his appeals.

On May 2, 2007, this Court entered an Amended Order Granting

Defendant's Motion For Partial Summary Judgment ("Prior Order"), which

concerned the VA's April 6, 2006 decision.  Yonemoto appealed that order to the

Ninth Circuit, which dismissed the appeal as moot because "the VA produced the

redacted materials [at issue in the appeal] in the discovery process of his EEOC

claim."  The court remanded the case, stating that "the district court can determine

whether Yonemoto's entire claim is moot."

Before the Court are Yonemoto's Motion For Summary Judgment and

the VA's Counter-Motion For Summary Judgment.  The Court heard these

Motions on December 11, 2009.  After careful consideration of the Motions, the

supporting and opposing memoranda, and the arguments of counsel, the Court

DENIES Yonemoto's Motion and GRANTS the VA's Motion.

<u>BACKGROUND</u>

Yonemoto is employed by the VA as a health systems specialist.

(Yonemoto Decl'n ¶ 4.)  Between May 23, 2005 and April 2, 2006, he made

numerous written requests to the VA for copies of, among other things, email

messages sent and/or received by certain VA employees under FOIA and the

Privacy Act.  (<u>Id.</u> ¶ 5.)  The VA responded by providing him with nearly 1,500

pages of documents, some of which were redacted pursuant to FOIA Exemptions

2, 5, and 6.[1]  (Miyamoto Decl'n ¶ 2.)  After the VA General Counsel upheld the

redactions on appeal, Yonemoto filed this lawsuit.

As noted above, on May 2, 2007, this Court entered its Prior Order

granting summary judgment to the VA with respect to some of the emails in

dispute.  (Doc. 26.[2])  Although Yonemoto appealed to the Ninth Circuit, the appeal

was dismissed as moot because the VA had "produced the redacted materials [at

issue in the appeal] in the discovery process of his EEOC claim."  (Doc. 35.)  The

court remanded the case, stating that "the district court can determine whether

Yonemoto's entire claim is moot."  (Id.)

Upon remand, this Court instructed Yonemoto to determine which

documents he had yet to receive from the VA in unredacted form.  (Doc. 37.)  In

response, on February 27, 2009, he filed a Submission of the Redacted Documents

That He Requests The Un-Redacted Originals.  (Doc. 41.)  Upon review of that

document, the VA determined that Yonemoto had received some of those emails in

unredacted form through discovery in his EEOC cases, and therefore stopped its

review of those emails.  (Miyamoto Decl'n ¶ 4.)  This Court also held several

---

[1] The VA also produced other documents to Yonemoto in connection with his various proceedings before the Equal Employment Opportunity Commission ("EEOC").  (Miyamoto Decl'n ¶ 3.)

[2] Citations in this format refer to the document number assigned to each document on this Court's docket sheet.

3

status conferences and settlement conferences in an attempt to reach a resolution in this case. As it was clear that no solution could be reached, the Court instructed the parties to file the present Motions for Summary Judgment.

Yonemoto's Concise Statement in Support of his Motion contains 205 emails in their redacted form, and he moves for production of their unredacted versions. (Exs. A-F.) The VA determined it had no objection to making 190 of those emails available to Yonemoto for viewing in his capacity as a VA employee. (Miyamoto Decl'n ¶ 6.) After Yonemoto and his attorney reviewed the 190 emails, he withdrew his requests for 33 of them but maintained his request for the remaining 157 emails. (Id.) The VA thereafter offered to produce those 157 emails in unredacted form to Yonemoto in his capacity as a VA employee, but he rejected that offer. (Id.)

The VA withheld from Yonemoto the unredacted versions of only 15 (of the 205) emails. Three of those emails are duplicates; therefore, there are essentially 12 emails that Yonemoto saw only in redacted form and seeks to obtain in unredacted form. As counsel for both parties acknowledged at the December 11, 2009 hearing, those 12 emails are at the center of the present dispute.

4

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(c).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.   See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

In FOIA cases, "a district court must ensure that it has 'an adequate factual basis for its decision.'"   Nevada v. U.S. Dep't of Energy, 517 F. Supp. 2d 1245, 1256 (D. Nev. 2007).  The Ninth Circuit distinguished the burdens at trial and summary judgment as follows:

> Under FOIA, the government at trial bears the burden of proving that the requested document is exempt from disclosure.  However, at summary judgment the moving party bears the burden of showing there is an absence of evidence to support an element that the nonmoving party must prove at trial.  Therefore, to prevail on its summary judgment motion, [the plaintiff] bears the burden of showing that there is an absence of evidence supporting the government's claimed exemption.

Prof'l Programs Group v. Dep't of Commerce, 29 F.3d 1349, 1353-54 (9th Cir. 1994) (citations omitted).

## DISCUSSION

A.      Disclosure Under FOIA

FOIA mandates a policy of broad disclosure of government documents when production is properly requested.  Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 741-42 (9th Cir. 1980); 5 U.S.C. § 552. Section 552(a)(3) provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3).

When a request is made, an agency may withhold a document or portions thereof "only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement contained in

6

§ 552(b)."  <u>Church of Scientology</u>, 611 F.2d at 742.  The following three

exemptions are relevant to this case, where disclosure under FOIA is exempted for

matters that are:

> (2) related solely to the internal personnel rules and
> practices of an agency;
> . . .
> (5) inter-agency or intra-agency memorandums or letters
> which would not be available by law to a party other than
> an agency in litigation with the agency; [or]
> (6) personnel and medical files and similar files the
> disclosure of which would constitute a clearly
> unwarranted invasion of personal privacy.

5 U.S.C. § (b)(2, 5, 6).

The FOIA exemptions are to be narrowly construed.  <u>Church of</u>

<u>Scientology</u>, 611 F.2d at 742.  The burden is on the government agency to establish

that a given document is exempt from disclosure.  <u>Id.</u>  Although "the government

may not rely upon 'conclusory and generalized allegations of exemptions,' . . . [it]

need not specify its objections in such detail as to compromise the secrecy of the

information."  <u>Id.</u>  The government may reply upon "detailed affidavits or oral

testimony so long as the evidence offered enables the court to make an independent

assessment of the government's claim of exemption."  <u>Id.</u>  "If the agency supplies a

reasonably detailed affidavit describing the document and facts sufficient to

establish an exemption, then the district court need look no further in determining

whether an exemption applies." Id.  Courts may also examine the disputed

documents in camera.  Id.

At the December 11, 2009 hearing on the present Motions, Yonemoto

suggested that the Court view the 12 emails in camera to determine whether

Exemptions 2, 5, and/or 6 apply.  The VA similarly offered to produce the emails

to the Court for an in camera inspection.  (Defendant's Reply at 6 n.1.)  The Court

finds that an in camera review of the 12 emails is appropriate, and the VA

produced them to the Court on December 14, 2009.

1.      The 157 Emails Offered to Yonemoto in Unredacted Form

As noted above, the VA showed Yonemoto and his counsel 190

emails in unredacted form.  (Miyamoto Decl'n ¶ 6.)  Yonemoto withdrew his

request for 33 of those emails, and maintained his request for the remaining 157.

(Id.)  The VA offered to produce unredacted copies of the 157 emails to Yonemoto

as a VA employee, but he declined that offer.  (Id.)

The VA argues that it is entitled to summary judgment as to the 157

emails it offered to Yonemoto.  Notably, nowhere in Yonemoto's moving papers

does he specifically address any of the 157 emails.  At the December 11, 2009

hearing, the Court stated its inclination that Yonemoto's claim for those 157 emails

appears to be moot, and asked Yonemoto for any legal authority suggesting that his

claim for them is not moot.  Yonemoto was unable to cite any such authority.

In <u>Papa v. United States</u>, 281 F.3d 1004, 1013 (9th Cir. 2002), the

Ninth Circuit held that "the production of all nonexempt material, however

belatedly, moots FOIA claims."  (<u>See</u> <u>Yonemoto v. Dep't of Veterans Affairs</u>, No.

07-16366, at 2 (9th Cir. 2008).)  For this proposition, the Ninth Circuit cited to the

District of Columbia Circuit, which had stated:

> We would simply note at this juncture that, however
> fitful or delayed the release of information under the
> FOIA may be, once all requested records are surrendered,
> federal courts have no further statutory function to
> perform. . . .  Under 5 U.S.C. § 552(a)(4)(B), a federal
> court is authorized only to "enjoin the agency from
> withholding agency records and to order the production
> of any agency records improperly withheld."  Thus,
> "(o)nce the records are produced the substance of the
> controversy disappears and becomes moot since the
> disclosure which the suit seeks has already been made."

<u>Perry v. Block</u>, 684 F.2d 121, 125 (D.C. Cir. 1982).

In this case, the VA offered to produce exactly what Yonemoto seeks

– i.e., the 157 emails in their unredacted form.  Therefore, the substance of the

controversy regarding these emails "disappears and becomes moot."  <u>Id.</u>  The

Court concludes that the VA is entitled to summary judgment as to those emails.

2.     The 12 Emails Yonemoto Did Not View in Unredacted Form

After addressing the 157 emails above, 15 emails remain in dispute.

Of those 15 emails, three are duplicates.  (Doc. 62 at 4.)  Therefore, essentially 12

emails are at issue.  Although the VA provided those emails to Yonemoto in

redacted form, he has not seen them in unredacted form.  The VA argues that these

emails are exempt under FOIA Exemptions 2, 5, and/or 6.  In deciding whether the

Exemptions properly apply to those emails, this Court reviewed them in camera.

Notably, none of the 12 emails mentions, discusses, or pertains to Yonemoto.

a.     Exemption 2

Exemption 2 of FOIA exempts from disclosure matters that are

"related solely to the internal personnel rules and practices of an agency."  5 U.S.C.

§ 552(b)(2).  There are two categories of information that fall within

Exemption 2's ambit - "Low 2" and "High 2" materials.  Milner v. United States

Dep't of the Navy, 575 F.3d 959, 963 (9th Cir. 2009).  "Low 2" materials include

"rules and practices regarding mundane employment matters such as parking

facilities, lunch hours, and sick leave, which are not of 'genuine and significant

public interest.'"  Id.  These are matters "in which the public could not reasonably

be expected to have an interest."  Asian Law Caucus v. United States Dep't of

Homeland Sec., No. C 08-00842 CW, 2008 WL 5047839, at *3 (N.D. Cal. 2008).

"High 2" materials are "more sensitive government information," the "disclosure

of which 'may risk circumvention of agency regulation.'"  Milner, 575 F.3d at 963.

Only "Low 2" materials are at issue here.

The VA invokes Exemption 2 for five of the 12 emails.[3]  (Doc. 62.)[4]

Email 1 discusses a rumor that was spreading among employees, concerning who

was to be selected as the next Director of the VA in Hawaii.  Email 5 was provided

to Yonemoto in a mostly unredacted form, but the redacted portion discusses the

inappropriate and unsupportive tone an employee used in an email about the VA

facilities in Honolulu.  The unredacted portion of Email 7 announces who will be

the Acting Director.  In the redacted portions, an employee jokes with that person

about her appointment as Acting Director and states his preference to work with

one employee over another.

With respect to Emails 6 and 8, the VA invokes Exemptions 2 and 6

as reasons for nondisclosure.  The first email in Email 6 was produced to

---

[3] In discussing the specific emails in this Order, the Court is careful not to disclose information the VA intends to keep secret.  Thus, the Court describes the substance of the emails only to the extent the VA already described them to Yonemoto in Documents 56 and 62.  The Court's in camera review of the emails confirms the accuracy of those descriptions.

[4] The 12 emails are spread throughout Exhibits A through F of Yonemoto's Concise Statement of Facts.  (Doc. 47.)  Because the Concise Statement does not have page numbers or identify the 12 emails in particular, the Court adopts the numbering system for the emails used by the VA in its Notice of Submission of Materials for In Camera Review.  (Doc. 62.)  For example, "Email 1" will refer to the email dated October 4, 2005 at 6:42 a.m., and so on.  (Id. at 2.)

Yonemoto's counsel in his EEOC case.  (Doc. 62 at 3.)  In the remainder of that

email thread, one employee asks another whether he is interested in a particular

position, and he states his reasons for not being interested in it.  Email 8 contains a

few of the emails in Email 6, including whether that employee is interested in that

other position.

      None of the above emails concerns Yonemoto, and none of them

discusses matters of "genuine and significant public interest."  <u>Milner</u>, 575 F.3d

at 963.  The public could not "reasonably be expected to have an interest" in

rumors among agency employees, the tone of an employee's unsupportive email,

whether an employee prefers to work with one person over another, and whether an

employee is interested in another position.  <u>See</u> <u>Asian Law Caucus</u>, 2008 WL

5047839, at *3.  The VA provided these emails to Yonemoto in redacted form and

supplied a reasonably detailed document (Doc. 56) describing the emails and

including facts sufficient to establish Exemption 2's application.  <u>Church of</u>

<u>Scientology</u>, 611 F.2d at 742.  Yonemoto therefore bears the burden of showing

the absence of evidence supporting the VA's claimed exemption, but fails to even

address these specific emails in any of his moving papers.  <u>Prof'l Programs Group</u>,

29 F.3d at 1353-54.  Summary judgment is therefore granted in the VA's favor.

b.      Exemption 5

Exemption 5 of FOIA exempts from disclosure matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision shields "those documents, and only those documents, normally privileged in the civil discovery context."  <u>Carter v. United States Dep't of Commerce</u>, 307 F.3d 1084, 1088 (9th Cir. 2002).  Accordingly, it includes a "deliberative process" privilege, the purpose of which is "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."  <u>Id.</u> at 1089.  Exemption 5 covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  <u>Id.</u>

"To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"  <u>Id.</u>  "A document may be considered predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision.'"  <u>Id.</u>  In determining whether a document is "deliberative," courts "focus on the effect of the materials' release:  the key question in Exemption 5 cases is whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid

13

discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. at 1090.  Predecisional materials are privileged to the extent they reveal the mental processes of decision-makers.  Id.

In this case, the VA invokes Exemption 5 for two of the 12 emails. (Doc. 62.)  In the redacted portions of Email 11, VA employees discuss their children and express their concerns over the Honolulu VA having to fund the moving expenses for employees relocating to or from the mainland.  The redacted portions of Email 12 discuss how the VA should respond to a letter from the Department of Labor and how to proceed in the future when similar problems arise.

In each of the above emails, the Interim Director for the VA in Hawaii (see Doc. 62 at 2) candidly discusses how to proceed with funding relocating employees and with future letters from the Department of Labor.  These communications appear to have assisted the Interim Director in arriving at a decision on how to address these issues, and exposing the discussions could discourage candid dialogues in the future.  Carter, 307 F.3d at 1088.  Because the emails "reveal the mental processes of decision-makers," they are privileged.  Id. at 1090.  Given that the VA met its burden of providing a reasonably detailed document (Doc. 56) describing the emails with facts sufficient to establish

Exemption 5's application, and considering that Yonemoto fails to address these particular emails or show the absence of evidence supporting that exemption, the VA is entitled to summary judgment as to these emails.  Prof'l Programs Group, 29 F.3d at 1353-54; Church of Scientology, 611 F.2d at 742.

> c.    Exemption 6

Exemption 6 exempts from disclosure materials that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exemption "provides a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information by excluding those kinds of files, the disclosure of which might harm the individual."  Church of Scientology, 611 F.2d at 745.

This Court must first determine whether the emails are personnel, medical, or "similar" files.  The phrase "similar files" has a "broad, rather than a narrow meaning."  Forest Serv. Employees for Envt'l Ethics v. United States Forest Serv., 524 F.3d 1021, 1024 (9th Cir. 2008).  "[G]overnment records containing information that applies to particular individuals" satisfy this "minimal" threshold test of Exemption 6.  Id.; Lurie v. Dep't of Army, 970 F. Supp. 19, 35 (D.D.C. 1997).  This Court previously noted that intra-agency emails qualify as

"similar files" for purposes of Exemption 6.  (Prior Order at 5 (citing Kidd v. Dep't of Justice, 362 F. Supp. 2d 291, 296 (D.D.C. 2005).)

The VA invokes Exemption 6 for nine of the 12 emails.[5]  (Doc. 62.) The redacted portion of Email 2 describes a medical illness of an identified employee and clearly qualifies as a "medical file."  The other eight emails "appl[y] to particular individuals" and consequently meet the "similar file" requirement of Exemption 6.  See Forest Service, 524 F.3d at 1024.  Specifically, the redacted portion of Email 3 explains why an employee's mother is disqualified from participating in a research study.  Email 4 discusses access to records of a particular VA employee who had filed several EEOC complaints against the agency.  Emails 6 and 8 contain one employee's query to another as to his interest in a particular position, and he explains why he is not interested in it.  Email 9 is a conversation about a rumor concerning who was to be selected as the Director for the VA in Hawaii.  In Email 10, a VA employee complains about another employee, and supervisors discuss how to resolve the problem and work toward a solution.  Email 11 includes a conversation about expenses that the Honolulu VA has to pay for employees relocating to and from the mainland.  Email 12 discusses

---

[5] Of those nine emails, four are exempt under Exemptions 2 or 5 as discussed above. Specifically, Emails 6 and 8 are exempt under Exemption 2, and Emails 11 and 12 are exempt under Exemption 5.

a particular VA case and the timeliness of responding to a Department of Labor letter relating to that case.  Each of these emails are "medical files" or "similar files" under 5 U.S.C. § 552(b)(6).

Having determined that the emails satisfy the threshold test of Exemption 6, this Court next considers whether the disclosure of information in the emails would constitute a "clearly unwarranted" invasion of personal privacy.  Id. In conducting this inquiry, the Court must "balance the public interest in disclosure against the interest Congress intended the exemption to protect."  Id.  Two guideposts are critical to this analysis.  Id. at 1024-25.  First, "the only relevant 'public interest' is the extent to which disclosure would 'contribute significantly to public understanding of the operations or activities of the government.'"  Id. at 1025.  In other words, "information about private citizens . . . that reveals little or nothing about an agency's own conduct' is not the type of information to which FOIA permits access."  Id.  Second, the reasons why Yonemoto seeks the emails are "irrelevant" to this Court's inquiry.  Id.

Yonemoto cites to VA directives and handbook provisions in arguing that the authors of the emails have no privacy interest in the communications because they used government computers when drafting them.  (Plaintiff's Motion at 16-22, 30.)  However, as this Court concluded in the Prior Order, even if the

authors have no expectation of privacy for Fourth Amendment purposes, they "do have a personal privacy interest in the thoughts and beliefs contained in their communications."  (Prior Order at 9.)

On the other hand, the public has no legitimate interest in the redacted portions of the emails.  (See id.)  The only relevant inquiry in determining the public interest is whether disclosure will "contribut[e] significantly to public understanding of the operations or activities of the government."  (Id.)  Yonemoto contends that the public has an interest in knowing whether VA officials misuse government property or violate VA policies when they "disparage employees such as himself" through the use of email.  (Plaintiff's Motion at 30-31.)  After examining the nine emails in camera, however, the Court finds that none of them disparages employees or suggests that VA officials were misusing government property.  The emails merely contain "information about private citizens . . . that reveals little or nothing about an agency's own conduct" and is therefore "not the type of information to which FOIA permits access."  Forest Service, 524 F.3d at 1025.  Indeed, none of the emails contains information that, if disclosed to the public, would "contribute significantly to public understanding of the operations or activities or the government."  Id.  Accordingly, there is no public interest in disclosure to weigh against the authors' legitimate privacy concerns.

18

After balancing the nonexistent public interest in disclosure against the interest protected by Exemption 6, the Court concludes that disclosure of the redacted information would constitute a clearly unwarranted invasion of privacy under 5 U.S.C. § 552(b)(6).  As this Court previously noted, when a personal privacy interest is weighed against the absence of any public interest in disclosure, the requested records may be properly withheld.  (Prior Order at 10 (citing Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).)

Yonemoto argues that disclosure of these emails is required under the President's Memorandum for the Heads of Executive Departments and Agencies, as well as the Attorney General's and the Office of Information Policy's memoranda.  (Plaintiff's Ex. JJ, Supp. Ex. C-D.)  The President's memorandum calls on agencies to adopt a presumption in favor of disclosure and states that it "does not create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States" or its agencies.  (Plaintiff's Supp. Ex. C.)  The other memoranda set forth guidelines for agencies to follow when responding to FOIA requests.  Here, the VA states that it did consider these new guidelines after they came into effect and applied them in making the 190 emails available to Yonemoto.  (Defendant's Reply at 5.)  The VA therefore satisfied the requirements of these memoranda.

19

In summary, the Court concludes that the VA met its burden in establishing that Exemptions 2, 5, and/or 6 apply to the above emails.  Yonemoto does not specifically address any of these emails in his papers or at the hearing and therefore fails to show "an absence of evidence supporting the government's claimed exemption."  See Prof'l Programs Group, 29 F.3d at 1353-54.  Therefore, the Court grants summary judgment in the VA's favor with respect to Yonemoto's FOIA claim.

B.          Disclosure Under the Privacy Act

In addition to seeking the redacted portions of the emails under FOIA, Yonemoto also seeks their production under the Privacy Act.  The Privacy Act requires agencies that maintain a "system of records" to permit individuals "to gain access to his record or to any information pertaining to him which is contained in the system."  5 U.S.C. § 552a(d)(1).  Unlike FOIA, disclosure is not the primary goal of the Privacy Act.  Henke v. United States Dep't of Commerce, 83 F.3d 1453, 1456 (D.C. Cir. 1996).  Rather, its principal purpose is to "safeguard[] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records."  Bartel v. F.A.A., 725 F.2d 1403, 1407 (D.C. Cir. 1984).  To that end, the Privacy Act forbids agencies from

disclosing information about an individual without "the prior written consent of[]
the individual to whom the record pertains."  5 U.S.C. § 552a(b).

Here, Yonemoto argues that his request for emails "essentially
consisted of copies of all emails from Microsoft Outlook, sent or received by
certain VA employees <u>in which he is the subject matter</u>."  (Plaintiff's Motion at 37
(emphasis added); Plaintiff's Opp. at 32.)  As discussed above, however, none of
the 12 emails pertains to (or even mentions) Yonemoto.  Rather, the emails concern
other VA employees and, in some instances, employees' family members.
Therefore, even assuming the emails are part of a "system of records" maintained
by the VA (as Yonemoto contends), disclosure is improper under the Privacy Act
without "prior written consent of" those employees or their family members.
Absent evidence of such consent, production under the Privacy Act is improper,
and the VA is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Yonemoto's Motion
For Summary Judgment and GRANTS Defendant's Counter-Motion For Summary
Judgment.

21

DATED:  Honolulu, Hawaii, December 22, 2009.

IT IS SO ORDERED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Ronald M. Yonemoto v. Department of Veterans Affairs, Civ. No. 06-00378 BMK; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT.